### THIRD DEPARTMENT, JULY, 1977

### (July 28, 1977)

■ In the Matter of ANONYMOUS et al., Respondents. ALBANY COUNTY BAR ASSOCIATION, Petitioner.—Respondents are members of an Albany law firm which entered into an agreement with one or more chapters of the Civil Service Employees Association, Inc. (CSEA) to provide legal services to members of the chapters at a fixed schedule of fees pursuant to a group legal services plan. The Albany County Bar Association has instituted this disciplinary proceeding alleging that portions of the plan are in conflict with respondents' professional responsibilities as lawyers and, in particular, with the standards of professional responsibility set forth in the lawyers' Code of Professional Responsibility adopted by the New York State Bar Association and approved by this court in section 806.2 of the rules governing conduct of attorneys (22 NYCRR 806.2). Respondents have moved to dismiss the petition for legal insufficiency, contending that their plan is neither in violation of the Code of Professional Responsibility nor subject to the provisions of subdivision 5 of section 495 of the Judiciary Law. We find the petition sufficient with respect to the charges of misleading advertising and lack of Appellate Division approval pursuant to section 495 of the Judiciary Law. By their agreement, respondents have undertaken to provide legal services to members in good standing of sponsoring chapters of CSEA and to their spouses and unemancipated children under age 18. The agreement does not create a prepaid plan by which respondents are employed by the sponsors to render services for their members, but rather respondents have agreed to render specified legal services, at prearranged fees set forth in a fee schedule, pursuant to agreements to be made directly with members and beneficiaries, who shall be considered the firm's clients. The agreement further provides that each sponsor will use a means of dignified commercial publicity in recommending the law firm to its members, which publicity shall be in compliance with the Code of Professional Responsibility and may include limited biographical information concerning the law firm's attorneys. Respondents also agree to maintain all records required by the Code of Professional Responsibility and to submit the records to any appropriate authority, as may be required. Alleging that respondents are professionally responsible for the acts of the sponsoring organization, the petition charges that certain portions of the plan are in conflict with the Code of Professional Responsibility in these respects: 1. The plan fails to provide to members the right to select counsel other than those approved by the sponsor (II-a). 2. The sponsor's publicity circular is false and deceptive (II-b). 3. The plan goes beyond the area of service to its own members; adversely affects the practice of law generally in the area served; constitutes advertising against the profession generally and in favor of respondents; and, by means of the rate

schedule, threatens the ability of the Albany County Bar Association to continue to provide adequate legal services (II-c). 4. Members of the plan are unable to exercise an informed judgment in determining whether to utilize the plan's attorneys, and the range of legal services offered would indicate that the respondents' attorneys, because of their limited experience, will be unable to render competent service (II-d). 5. The sponsoring "chapters" of CSEA, though unincorporated associations, are not legal entities but merely agents of CSEA and therefore as agents of CSEA fall within the prohibition of the Code of Professional Responsibility [sic] concerning practice of law by a corporation (III). 6. The plan covers persons who are not active members of the sponsor (IV). First, it is alleged in paragraph II-a that the plan fails to provide members with the right to select attorneys other than those approved by the sponsor in violation of DR 2-103 (D) (4) (e) of the code. That section provides that a lawyer is not prohibited from being recommended by an organization that promotes the use of his services to its members, provided that, among other things, any member who is entitled to have legal services furnished may, if he so desires, select counsel other than that furnished or approved by the organization for the particular matter involved, and, further, provided that the legal services plan provides appropriate relief for any member who asserts a claim that representation by counsel furnished or approved would be unethical, improper or inadequate under the circumstances of the matter involved. Respondents argue that, since a sponsor's members are free to choose the benefits of the plan or not, as they wish, there is no denial of their right to choose an attorney other than one approved by the sponsor and, hence, there is no need to include a specific provision in the agreement to that effect. We agree. The plan provides that the sponsor wishes to recommend the furnishing of legal services by qualified attorneys at a reduced cost through a group plan. It provides that members availing themselves of the services of the law firm shall consider themselves clients of the firm and shall pay all fees directly to the firm. It does not provide that members must, nor does it in any way compel them to, use the services of respondents' law firm. Since the sponsor merely recommends the use of the firm, and the members are under no financial or other compulsion to select the firm, but are free to do so or not, as they choose, there is no reason to require that the plan contain a specific provision for relief where representation of a member would be improper, and, therefore, in this respect the plan cannot be said to be in conflict with the code. Secondly, it is alleged in paragraph II-b that the sponsor's circular which advertises the benefits of the plan to its members is false in stating that the plan offers a wide-range of personal legal services at substantial savings and, more specifically, in stating that the savings are "in most cases one-third to one-half less that the current rates," the falsity being in the fact that there are no established current rates for legal fees in Albany County. Respondents argue that they cannot be held accountable for an alleged improper description of the plan made by an officer of the sponsoring organization, and that failure to allege in the petition violation of a specific disciplinary rule or ethical consideration is fatal. We do not agree. The code provides that a lawyer shall not accept employment when he knows or it is obvious that the person who seeks his services does so as a result of conduct prohibited by the code. (DR 2-103 [E].) In essence, what respondents are contending is that what an attorney is forbidden to do directly may, nonetheless, be accomplished indirectly pursuant to agreement. The cited disciplinary rule was obviously intended to prevent circumvention of the code by indirection. Accordingly, insofar as it alleges that

respondents are condoning false and deceptive advertising in their behalf, the petition is sufficient and the motion to dismiss this charge should be denied. (cf. *Bates v State Bar of Ariz.*, 433 US 350.) Respondents further contend that the disciplinary rules relied on by petitioner apply only to prepaid legal services plans and not to group plans. We cannot agree. The code broadly refers to "qualified legal assistance organizations" (DR 2-101 [B]) and to "Any bona fide organization that recommends, furnishes or pays for legal services to its members or beneficiaries" (DR 2-103 [D] [4]). These general terms were obviously used for the purpose of encompassing within the reach of the code all of the many diverse legal assistance plans and programs which were expected to evolve for the purpose of satisfying the desires of various groups and organizations. Whether every existing disciplinary rule will be applicable to every group plan that may be devised and put into operation need not be decided. However, simply because a plan may not fit precisely into either broad category mentioned in the code does not exempt it from the rules that obviously do apply. Respondents further argue that unless a group plan falls within the purview of subdivision 5 of section 495 of the Judiciary Law, the disciplinary and ethical considerations normally applicable to an organization engaged in the practice of law may not be applied to a plan which establishes a direct attorney-client relationship. We find no merit to this contention. The disciplinary rules and ethical considerations are aimed at the conduct of attorneys and not at organizations which may desire to furnish legal services through group plans. Accordingly, whether this plan does or does not require Appellate Division approval is not dispositive of the misleading advertising charge. Next, respondents contend that the allegations contained in paragraph II-c of the petition appear to be an invalid attack upon the entire concept of group legal services, which concept has been approved by the Court of Appeals in *Matter of Feinstein* (36 NY2d 199) and by the legal profession by virtue of the comprehensive treatment of group legal services in the Code of Professional Responsibility. (See Opns Nos. 147 and 428 of the Committee on Professional Ethics of the New York State Bar Association.) Although the Supreme Court's decision in *Bates v State Bar of Ariz.* (433 US 350, *supra)* strongly indicates that this charge is legally insufficient, for the purposes of this motion, it is sufficient to reject it for being lacking in factual support. Similarly, we find no merit to the allegations of paragraph II-d respecting the alleged inability of members of the plan to exercise an informed judgment in deciding whether to use the plan and in questioning the ability of the attorneys employed in respondents' law firm to render competent legal services because of their limited experience in view of the broad range of services offered. Indeed, we find this charge similarly so devoid of any factual support as to be insufficient for that reason alone. Liberally construed, we understand paragraph III of the petition to allege that the plan at bar is deficient because its sponsors have not obtained Appellate Division approval pursuant to subdivision 5 of section 495 of the Judiciary Law. Respondents, relying on decisions of the Appellate Division, Second Department, in *Matter of Westchester County Ch. CSEA* (62 AD2d 1186) and *Connors v Katz* (57 AD2d 580), argue that such approval is not necessary inasmuch as the sponsoring chapters do not actively participate in the plan's operation, the members are under no compulsion to use the plan, and a direct attorney-client relationship is maintained whenever the plan is used. We are constrained to disagree. Although subdivision 5 of section 495 does not refer expressly to group legal services plans, the Court of Appeals, in reversing and remanding to the Appellate Division a proceeding pursuant

thereto, clearly held in *Matter of Feinstein* (36 NY2d 199, *supra)* that a group plan of municipal employees, in many respects similar to the plan at bar, could not be denied threshold review by the Appellate Division (p 205). The responsibility of the Appellate Division in such a matter, the court said (p 205): "is to assess the authenticity of the plan, to assure its freedom from any taint of improper professional conduct, to preserve the attorney-client relation, to require full disclosure to prevent fraud or other wrong upon the public, and, above all, to make sure that future professional conduct on behalf of the applicant organizations remains subject to disciplinary control by the Appellate Division". Lastly, we find no merit to the charge in paragraph IV that the description of the group to be served is impermissibly broad by including persons who are not actual active members of the sponsoring chapters, to wit, a member's spouse and unemancipated children under age 18. Whereas this extension of the class of eligible persons finds support in the views of the Committee on Professional Ethics of the New York State Bar Association (Opn No. 416), we find no support for petitioner's view. In sum, we find paragraphs II-b, II-c (insofar as it charges improper advertising) and III sufficient to withstand the motion, and extend respondents' time to file an answer to 20 days after service of a copy of the order to be entered hereon with notice of entry. Greenblott, J. P., Sweeney, Kane, Mahoney and Herlihy, JJ., concur.